**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MANUEL GARZA and ELIZABETH GARZA,** | § § § | |
| **Plaintiffs,** | § § | |
| **v.** | § § | No. 3:11-cv-3504-M (BF) |
| **EMC MORTGAGE and JP MORGAN CHASE BANK, N.A.,** | § § § | |
| **Defendants.** | § § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Defendants EMC Mortgage ("EMC") and JP Morgan Chase Bank, N.A. ("Chase") have filed a joint motion for summary judgment in this *pro se* civil action arising out of foreclosure proceedings initiated against Plaintiffs Manuel Garza and Elizabeth Garza's home in Duncanville, Texas (the "Property"). For the reasons stated herein, the District Court should GRANT Defendants' motion.

**Background**

In November 2004, Plaintiffs refinanced the original purchase money loan for the Property with an adjustable rate home equity mortgage loan from Finance America, LLC ("Finance America"). *See* Def. MSJ App., Ex. A at 37. In connection with that transaction, Plaintiffs executed a promissory note (the "Note") payable to Finance America and a Texas Home Equity Security Instrument ("Security Instrument") as security for the Note. *See id.*, A-3 & A-4. Finance America subsequently transferred Plaintiffs' loan into the Bear Stearns Asset Backed Securities I LLC Asset Backed Certificates, Series 2005-HE2 Trust ("Trust"). EMC serviced the loans in the Trust,

including Plaintiffs' mortgage loan, until April 1, 2011 when EMC transferred the servicing rights

in Plaintiffs' mortgage loan to Chase.  *See id.*, Ex. B.

Plaintiffs fell behind in their mortgage payments in 2007 and entered into a Loan

Modification Agreement ("First Modification") with EMC on or about July 10, 2007.  *Id.*, Ex. A at

42-43, 47 & A-5.  When Plaintiffs later fell behind in their mortgage payments again, EMC initiated

foreclosure proceedings against the Property.  *Id.*, Ex. A at 53.  Plaintiffs executed a Repayment

Agreement ("First Repayment Plan") dated June 20, 2008, *id.*, Ex. A-6, and EMC did not foreclose.

Plaintiffs entered into a second Loan Modification Agreement ("Second Modification") efffective

April 24, 2009, *see id.*, Ex. A-8, but they continued to experience financial problems.  *Id.*, Ex. A at

78 & A-10.  Plaintiffs applied for a third loan modification in August 2010.  *Id*, Ex. A-10.  EMC

denied Plaintiffs' application on January 31, 2011 because Plaintiffs' income exceeded the eligibility

requirements for the modification program.  *Id.*, Ex. A-11.  Plaintiffs challenged EMC's denial of

their loan modification request, *see id.*, Ex. A-12, and, at the same time, executed another

Repayment Agreement ("Second Repayment Plan") dated February 18, 2011.  *Id*., Ex. A-13.  EMC

nonetheless began taking steps towards foreclosure.

To forestall foreclosure, Plaintiffs filed a civil action in Texas state court in July 2011.

Defendants removed Plaintiffs' case to federal court on the basis of federal question jurisdiction.[1]

In their living pleading, Plaintiffs allege that Defendants breached the terms of the Note and Security

Instrument by failing to properly credit Plaintiffs' mortgage account, initiating foreclosure

---

[1] Plaintiffs' lawsuit was previously removed and then remanded to state court because the federal issue, as presented in Plaintiffs' original petition, was not substantial enough to provide federal question jurisdiction. *See Garza v. EMC Mortg.*, No. 3:11-CV-01919-M-BF, 2011 WL 6029821 (N.D. Tex. Nov. 15, 2011), *rec. adopted*, 2011 WL 6039958 (N.D. Tex. Dec. 5, 2011).  Following remand, Defendants promptly removed the case again based on Plaintiffs' amended complaint and their assertion of an independent cause of action for violations of the federal Fair Debt Collection Practices Act, 15 U.S.C § 1692, *et seq*.

proceedings, and failing to respond to communications from Plaintiffs disputing the validity of the outstanding mortgage debt and Defendants' attempts to foreclose on the Property. *See* Pl. 3d Am. Compl. (Doc. 17) at 6-7, ¶ 8.01 & 9, ¶ 9.01.  Plaintiffs complain that Defendants encouraged them to apply for a loan modification and then delayed and mishandled their application causing them to incur unnecessary fees and forcing them into foreclosure. *Id.* at 8-9, ¶¶ 8.04 & 8.05.  Plaintiffs further complain that Defendants misrepresented the extent or amount of their mortgage debt and the nature and requirements of the loan modification programs for which they were eligible. *Id.* at 10, ¶¶ 9.03 & 9.04.  Plaintiffs allege that Defendants' conduct violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C § 1692, *et seq.*, the Texas Debt Collection Act ("TDCA"), TEX. FIN. CODE § 392.001, *et seq.*, and the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE § 17.41, *et seq.*  Defendants now move for summary judgment as to all of Plaintiffs' claims and causes of action.  Plaintiffs failed to file a written response to Defendants' motion. Accordingly, the Court considers the motion without the benefit of a response.

## Legal Standards

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A party seeking summary judgment who does not have the burden of proof at trial need only point to the absence of a genuine fact issue. *See Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995).  This may be done "by pointing out 'the absence of evidence supporting the nonmoving party's case.'" *Id.* (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 913 (5th Cir. 1992)).  By contrast, a movant who bears the burden of proof at trial must establish "beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780

F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  Once the movant meets its initial burden, the nonmovant must show that summary judgment is not proper.  *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992).  The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence."  *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992).  The verified complaint and sworn interrogatory answers of a *pro se* litigant can be considered as summary judgment evidence to the extent such pleadings comport with the requirements of Fed. R. Civ. P. 56(e).  *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994).  All evidence must be viewed in the light most favorable to the party opposing the motion.  *See Rosado v. Deters*, 5 F.3d 119, 123 (5th Cir. 1993).

**Analysis**

Breach of Contract

In their most recent amended complaint, Plaintiffs allege that Defendants breached the Note and Security Agreement by (1) improperly crediting payments to their mortgage account, (2) referring their account to foreclosure and incurring legal fees, and (3) failing to respond to letters challenging the denial of a requested loan modification, the amount of their debt, and the commencement of foreclosure proceedings.  *See* Pl. 3d Am. Compl. at 6-7, ¶ 8.01 & 9, ¶ 9.01. Plaintiffs also contend that Defendants' breached the First Repayment Plan by referring Plaintiffs' loan to foreclosure and incurring legal fees when Plaintiffs were making payments under the Plan. Def. MSJ App., Ex. A, E. Garza depo. at 97-104; Ex. C, M. Garza depo. at 19-20.  To prevail on their claim for breach of contract under Texas law, Plaintiffs must prove: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  *Smith Int'l, Inc. v.*

4

*Egle Group, L.L.C.*, 490 F.3d 380, 387 (5th Cir. 2007) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App.--Houston [1st Dist.] 2001, no pet.)).

Defendants are entitled to summary judgment on Plaintiffs' breach of contract claim arising out of the Note and Security Instrument because the undisputed summary judgment evidence shows that Plaintiffs failed to perform or tender performance under those instruments. It is well-established that a party in default under a contract cannot assert a claim for breach of contract against the other party. *Water Dynamics, Ltd. v. HSBC Bank USA, Nat'l Ass'n*, 509 F. App'x 367, 369 (5th Cir. 2013) (citing *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex. 1990)). Here, Plaintiffs acknowledged that they were behind on their mortgage payments in each Modification Agreement and Repayment Plan they executed. Def. MSJ App., Ex. A-5, A-6, A-8 & A-13. They also admitted their delinquency in correspondence to Defendants seeking a modification of their mortgage loan. *Id.*, A-10. Plaintiffs failed to respond to several Requests for Admission and, thus, are deemed to have admitted that they failed to make their required mortgage payments and were in default under the Note and Security Agreement. *Id.*, Ex. A-9 & Ex. D-E, RFA Nos. 6, 7, 10, 11, 12, 13, 14, 17, 18, 19, 20, 32, 33, 34, 54, 55, 56.[2] Plaintiffs' undisputed failure to comply with their payment obligations under the Note and Security Instrument is fatal to their breach of contract claims arising out of those instruments.

---

[2] Rule 36 of the Federal Rules of Civil Procedure allows a party to request from any other party admissions to a broad range of factual matters, including the application of law to fact. FED. R. CIV. P. 36(a)(1); *In re Carney*, 258 F.3d 415, 419 (5th Cir. 2001). Under the rule, a party served with a request for admission has thirty days to answer or object to the request. FED. R. CIV. P. 36(a)(3). If a party fails to timely respond, the matter is deemed admitted and is "conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." FED. R. CIV. P. 36(b). If the request for admission concerns an essential issue, the failure to respond to the request can result in a grant of summary judgment against the non-responding party. *In re Carney*, 258 F.3d at 420, n.6 (collecting cases that grant summary judgment on basis of deemed admissions). Defendants served Plaintiffs requests for admissions by certified mail and first class mail. Def. MSJ App., Ex. D & E. Plaintiffs failed to file an answer or any objections to the requests. Nor did they make any effort to avoid the consequences of their failure to timely respond by moving to amend or withdraw the admissions. The matters to which the requests are directed are thus deemed admitted as a matter of law. *In re Carney*, 258 F.3d at 420; *see also Tranman, Inc. v. Griffin*, No. 3:11-CV-1046-M, 2013 WL 944502, at *4 (N.D. Tex. Mar. 12, 2013) (Lynn, J.).

*Mitchem v. Mortg. Elec. Registration Servs., Inc.*, No. 3:12-CV-1762-M-BH, 2013 WL 3870038, at *7-8 (N.D. Tex. Jul. 26, 2013) (Lynn, J.) (dismissing plaintiffs' breach of contract claim because plaintiffs conceded that they stopped making payments on their loan and, as a matter of law, plaintiffs' default prohibits any recovery on their breach of contract claim);   *Narvaez v. Wilshire Credit Corp.*, 757 F. Supp. 2d 621, 629 (N.D. Tex. 2010) (Lynn, J.) (granting summary judgment in favor of lender on breach of contract claim where borrower failed to produce any evidence that he performed his obligations under the deed of trust).

Defendants also are entitled to summary judgment on Plaintiffs' beach of contract claim arising out of the First Repayment Plan because Plaintiffs cannot establish a breach of that agreement by Defendants.   Plaintiffs contend that EMC breached the First Repayment Plan by referring their account to foreclosure and incurring legal fees when Plaintiffs were making payments in accordance with the Plan.   *See* Def. MSJ App., Ex. A, E. Garza depo. at 97-104.   However, the plain terms of the First Repayment Plan require Plaintiffs to pay attorney's fees incurred in connection with their default and the previously scheduled foreclosure sale.   *See* Def. MSJ App., Ex. A-6 at 1, ¶ 1; 2, ¶ 5; & 3, ¶ 10.h.   Although the First Repayment Plan provides that the foreclosure process is "on HOLD," *id.* at 3, ¶ 10.b, nothing in the agreement prohibits EMC from "referring" Plaintiffs' loan to foreclosure counsel or incurring legal fees to protect its interests.   In fact, the First Repayment Plan expressly provides that "Lender has not waived its right to proceed with the existing acceleration and/or foreclosure by acceptance of partial payments unless and until [Plaintiffs] make all payments due under this Agreement[.]"   *Id.* at 3, ¶ 10.d.   Plaintiffs fail to identify any evidence that raises a genuine fact issue as to whether Defendants breached the First Repayment Plan.   Therefore, the

6

District Court should grant Defendants' summary judgment motion with respect to Plaintiffs' claim for breach of contract.[3]

Fair Debt Collection Practices Act

Plaintiffs further allege that Defendants violated the FDCPA by failing to respond to letters disputing Defendants' decision to deny Plaintiffs' request for a third loan modification, the validity of their mortgage debt, and the commencement of foreclosure proceedings. *See* Pl. 3d Am. Compl. at 4-5, ¶¶ 7.04-7.07 & 9-10, ¶ 9.02. The FDCPA requires a debt collector to send, within five days of its initial communication with a consumer, a written notice that informs the consumer that if he or she disputes the debt, "the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector[.]" 15 U.S.C. § 1692g(a)(4). If a consumer notifies the debt collector in writing, within thirty days after receipt of the required notice, that the debt is disputed, "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt . . . ." *Id.*, § 1692g(b). Defendants argue that Plaintiffs' FDCPA claim fails because the alleged "dispute" letters were not timely sent.

None of the summary judgment evidence raises a genuine fact issue that any of Plaintiffs' letters were sent within the thirty-day period established by the FDCPA. Indeed, Plaintiffs admit that they did not send any of their letters to Defendants within thirty days after receiving the required notice from EMC. Def. MSJ App., Exs. D & E, RFA Nos. 48, 49, 51, 53, 57, 62, 63. Defendants are therefore entitled to summary judgment on Plaintiffs' FDCPA claim. *See Thompson v. Hughes,*

---

[3] Given Plaintiffs' failure to raise a genuine fact issue as to Defendants' breach of the First Repayment Plan, the Court pretermits discussion of whether Plaintiffs' breach of contract claim also fails because the agreement lacks independent consideration and/or fails to comport with the statute of frauds.

*Watters & Askanse, LLP*, No. 3:13-CV-0429-G-BH, 2013 WL 4441979, at *8 n.6 (N.D. Tex. Aug. 20, 2013) (holding plaintiff's FDCPA claim fails because evidence established that plaintiff's demand for validation was sent more than thirty days after the defendant sent its initial communication); *see also Cunningham v. Credit Mgmt., L.P.*, No. 3:09-CV-1497-GB-BF, 2010 WL 3791104, at *3 (N.D. Tex. Aug. 30, 2010), *rec. adopted*, 2010 WL 3791049 (N.D. Tex. Sept. 27, 2010) (holding plaintiff failed to state a claim under § 1692g(b) because he mailed his alleged validation request "well beyond the thirty-day period the FDCPA allows to dispute a debt"); *Johnson v. BAC Home Loans Servicing, LP*, 867 F. Supp. 2d 766, 784 (E.D.N.C. 2011) (holding mortgagors failed to state claim under FDCPA for failure to provide verification of debt where mortgagors failed to allege that they made request within thirty days of their receipt of written notice of debt).

## Texas Debt Collection Act

Plaintiffs allege that Defendants violated section 392.303(a)(2) of the TDCA by charging them for late fees and attorney's fees after they defaulted on their payment obligations. Pl. 3d Am. Compl. at 10, ¶ 9.03; Def. MSJ App., Ex. A, E. Garza depo. at 107-10. Section 392.303(a)(2) prohibits a debt collector from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." TEX. FIN. CODE § 392.303(a)(2). Here, the Note and Security Instrument expressly provide that Defendants may charge late fees and attorney's fees in the event of a default.[4] Def. MSJ App., Ex.

---

[4] The Note provides that "[i]f the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN (15) calendar days after the date it is due, [Plaintiffs] will pay a late charge to the Note Holder." Def. MSJ App., Ex. A-3 at 3, ¶ 7(A). The Security Instrument provides, in relevant part:

A-3 at 3, ¶ 7(A) & Ex. A-4 at 7-8, ¶ 9.  Plaintiffs admit they failed to make their required payments under the Note and that their failure constitutes a default under the Note and Security Instrument. *Id.*, Ex. D & E, RFA Nos. 6, 7, 10, 11, 12, 17, 18.  Plaintiffs also admit that Defendants never collected or attempted to collect a fee or charge that they were not permitted to charge. *Id.*, RFA 68. Thus, Plaintiffs' claims under section 392.303(a)(2) are without merit. *Watson v. CitiMortgage, Inc.*, 530 F. App'x 322, 328 (5th Cir. 2013) (holding section 392.303(a)(2) is inapplicable where deed of trust expressly authorizes bank to assess foreclosure costs and attorney's fees).

Plaintiffs also allege that Defendants violated sections 392.304(a)(8) and (a)(19) of the TDCA by sending mixed messages regarding the status of Plaintiffs' loan modification request.  Pl. 3d Am. Compl. at 10, ¶ 9.03; Def. MSJ App., Ex. A, E. Garza depo. at 122 & 132-33.  Section 392.304(a)(8) prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding."  TEX. FIN. CODE. § 392.304(a)(8).  Section 392.304(a)(19) is a catch-all provision that prohibits a debt collector from "using any other false representation or deceptive means to collect a debt." *Id.* at § 392.304(a)(19).  To violate the TDCA using a misrepresentation, "the debt collector must have made an *affirmative statement* that was false or misleading." *Kruse v. Bank of N.Y. Mellon*, 936 F. Supp. 2d 790, 792 (N.D. Tex. 2013) (emphasis in original).  Plaintiffs fail to identify any evidence that Defendants misrepresented the amount owed.  Instead, they merely assert that

---

If [ ] Borrower fails to perform the covenants and agreements contained in this Security Instrument . . ., then Lender may do and pay whatever is reasonable or appropriate to protect Lender's interest in the Property . . . .  Lenders's actions can include, but are not limited to . . . paying reasonable attorneys' fees to protect its interest in the Property.

*Id.*, Ex. A-4 at 7-8, ¶ 9.

various individuals at EMC gave them conflicting information regarding the status of their loan and whether they were approved for a modification. Def. MSJ App., Ex. A, E. Garza depo. at 122 & 132-33. Discussions regarding loan modifications and the postponement of foreclosure are not representations or misrepresentations of the amount or character of a debt. *Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 343 (5th Cir. 2012); *Wildy v. Wells Fargo Bank, NA*, No. 3:12-CV-01831-BF, 2013 WL 246860, at *5 (N.D. Tex. Jan. 21, 2013). Nor does having such discussions constitute "deceptive means" to collect a debt. *Wildy*, 2013 WL 246860, at *6. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' TDCA claims.

<u>Texas Deceptive Trade Practices Act</u>

Finally, Plaintiffs allege that Defendants' conduct in handling their loan modification request violates the DTPA. Pl. 3d Am. Compl. at 10, ¶ 9.04. Defendants move for summary judgment with respect to this claim on grounds that Plaintiffs do not qualify as "consumers" under the Act. "[C]onsumer status is an essential element of a DTPA cause of action." *Miller v. BAC Home Loans Servicing, L.P.*, 726 F.3d 717, 724 (5th Cir. 2013) (quoting *Mendoza v. Am. Nat'l Ins. Co.*, 932 S.W.2d 605, 608 (Tex. App. – San Antonio 1996, no writ)). An individual qualifies as a consumer for purposes of the DTPA only if: (1) the individual seeks to acquire goods or services by purchase or lease, and (2) the goods or services purchased or leased form the basis of the complaint. *Id.* at 725; *see also* TEX. BUS. & COM. CODE § 17.45(4) (defining "consumer"). Money is not a good or service under the DTPA, and, as a general rule, an individual who seeks only money in a transaction is not a consumer under the DTPA. *See Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 173-75 (Tex. 1980). "A mortgagor qualifies as a consumer under the DTPA if his or her primary objective in obtaining the loan was to acquire a good or service, and that good or service forms the basis of

10

the complaint." *Miller*, 726 F.3d at 725 (citing *Flenniken v. Longview Bank & Trust Co.*, 661 S.W.2d 705, 706-08 (Tex. 1983) (holding that plaintiffs could qualify as consumers because transaction with defendant bank involved loan that was used to finance the construction of a house)). However, a mortgagor seeking to refinance or otherwise modify his or her loan does not qualify for consumer status. *Id.* (plaintiffs did not qualify as consumers under DTPA where claim against defendant bank based on attempted loan modification that was not a part of the original financing scheme to acquire a house); *see also Preston v. Seterus, Inc.*, 931 F. Supp. 2d 743, 768 (N.D. Tex. 2013) (Lindsay, J.) (dismissing DTPA claim where plaintiffs alleged only that they sought to modify their mortgage loan and not to acquire, by purchase or lease, a "good" or "service"); *Swim v. Bank of Am., N.A.*, No. 3:11-CV-1240-M, 2012 WL 170758, at *6 (N.D. Tex. Jan. 20, 2012) (Lynn, J.) (same).  Because Plaintiffs' DTPA claim arises out of Defendants' handling of a request for a loan modification, their claim does not involve the purchase or lease of goods or services, and Plaintiffs do not qualify as consumers for purposes of the Act.  Accordingly, Defendants are entitled to summary judgment on Plaintiffs' DTPA claim.

## RECOMMENDATION

For the foregoing reasons, the Court recommends that the District Court GRANT Defendants' Motion for Summary Judgment (Doc. 38) and DISMISS all of Plaintiffs' claims and causes of action with prejudice.

11

SO RECOMMENDED, February 11, 2014.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a de novo determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

13